## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRIANNA MCCARTY, | |
| Plaintiff, | Case No. 22-cv-5751 |
| v. | Judge Mary M. Rowland |
| THE VILLAGE OF LAKEMOOR and CHIEF DAVID GODLEWSKI, individually and in his official capacity, | |
| Defendants. | |

## <u>ORDER</u>

Brianna McCarty brings this action against Defendants the Village of Lakemoor and Chief David Godlewski, alleging employment discrimination under the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act, a violation of her right to equal protection and the intentional infliction of emotional distress. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) and seek sanctions. For the reasons stated herein, Defendants' Motion to Dismiss [14] is granted in part and denied in part, and Defendants' Motion for Sanctions [15] is denied.

### I.   Background

The following factual allegations taken from the first amended complaint (Dkt. 13) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).[1]

### i.   McCarty's Employment History

McCarty was hired as a police officer for the Village of Lakemoor ("the Village") on June 14, 2017. Dkt. 13 at ¶ 16. On June 18, 2018, she was promoted to full-time officer by the Board of Fire and Police Commissioners. *Id*. at ¶ 17. At all relevant times, McCarty was one of only two female police officers working for the police department in the Village. *Id*. at ¶ 18.

---

[1] After McCarty filed her original complaint in October 2022, Defendants moved to dismiss [5]. In response, McCarty file her first amended complaint on January 19, 2023 [13].

1

On July 26, 2018 while on routine patrol, McCarty saw a suspicious vehicle parked in a driveway of a golf course. *Id*. at ¶¶ 19–20. When she approached to investigate, she noticed that the vehicle did not have a front license plate and appeared to be unoccupied. *Id*. at ¶ 21, 22. She then observed Kenneth Martel in the vehicle. *Id*. at ¶ 23. After McCarty questioned Martel, she went to run the license plate. When she re-approached the driver side, Martel pointed a handgun at her. *Id*. at ¶¶ 25–27. A struggle ensued, and Martel pointed a second handgun at McCarty. *Id*. at ¶ 28-30. McCarty continued to struggle until a backup officer arrived and shot and killed Martel. *Id*. at ¶ 31. McCarty was hospitalized because of the incident. *Id*. at ¶ 32.

Martel's vehicle had several loaded firearms, boxes of ammunition, and a prescription bottle containing human teeth, later identified as that of a murder victim. *Id*. at ¶ 33-34. In the days leading to the encounter with McCarty, Martel had been on a violent crime spree and was wanted for murder. *Id*. at ¶¶ 24, 35. McCarty received numerous awards for her service. *Id*. at ¶¶ 40, 41. Lakemoor Police Chief Godlewski ("the Chief") nominated McCarty for a prestigious award for her bravery and service. *Id*. at ¶ 42.

### ii. McCarty's Mental Health Treatment

After the shooting, McCarty was placed on administrative leave, sent to treatment with a Village therapist and diagnosed with Post Traumatic Stress Disorder (PTSD). *Id*. at ¶ 43-44. On August 9, 2018, the therapist told McCarty she could not return to work because she was still presenting symptoms. *Id*. at ¶ 45.[2] While on leave, McCarty went into the police station to complete her timecard and was approached by a male co-worker who pressured her to return to work. *Id*. at ¶¶ 47–48. Several other male officers encouraged her to return to work. *Id*. at ¶ 50. McCarty felt pressured to return to work and pushed herself and the therapist to return her to full time duty. *Id*. at ¶ 51. On September 4, 2018, the therapist released McCarty back to full duty, and McCarty returned to work without restrictions. *Id*. at ¶ 52.

### iii. McCarty's Return to Work and Alleged Harassment

On September 28, 2018, the Department had a debriefing about the July 26th incident. *Id*. at ¶ 53–55. McCarty shared that she was having difficulties returning to work and that her PTSD had exacerbated. *Id*. at ¶ 56. The therapist who was employed by the Village attended the debriefing and later told McCarty she was concerned that McCarty had returned to work too soon. *Id*. at ¶ 57. McCarty was put on light duty, which allows police officers to perform duties in the station but not patrol the streets. *Id*. at ¶¶ 59–60. McCarty spoke to the Deputy Chief about the light duty assignment who advised her that the therapist called Godlewski and suggested that McCarty be placed on light duty. *Id*. at ¶ 63. McCarty confirmed this with the

---

[2] There was no patient-doctor privilege between McCarty and the therapist who reported to Godlewski about McCarty's treatment. *Id*. at ¶ 46.

therapist who reported that she received a call from an anonymous male police officer who said he did not feel safe working with McCarty after hearing her speak at the debriefing. *Id*. at ¶¶64–65.

The Deputy Chief and the therapist informed McCarty that they were not aware of any specific complaints about her work, or of any performance issues. *Id*. at ¶ 66. To the contrary, a few days later during a session, the therapist informed McCarty that Godlewski called her and raised concerns about McCarty's performance. *Id*. at ¶ 67. Godlewski denied having this conversation with the therapist and told McCarty that he had been reviewing all her body-worn camera footage since her return to duty and concluded she had performed adequately. *Id*. at ¶ 68–69. On October 18, 2018, the therapist cleared McCarty to return to work but determined that her PTSD would prevent her from working the night shift. *Id*. at ¶ 70. The therapist also suggested that McCarty seek therapy from someone unaffiliated with the Department. *Id*. at ¶ 71.

In November 2018, McCarty began treatment with Dr. Robin Kroll with whom she signed a HIPPA release allowing communications between Dr. Kroll and the Department. *Id*. at ¶¶ 72, 74. Dr. Kroll and the Department agreed that McCarty should not work the night shift, but she was fully capable of working the day shift. *Id*. at ¶ 75. Shortly after being assigned to the day shift, McCarty observed that her male co-workers treated her differently. *Id*. at ¶ 76. For instance, they delayed in providing her back-up or did not provide back up at all. *Id*. at ¶¶ 77–82; 91–98. McCarty also learned of rumors in the Department that she was not fit for duty. *Id*. at ¶¶ 87, 89.

In early 2019, Sgt. Erb issued McCarty a "write up" because she allegedly failed to submit a report and was 10 and 15 minutes late for two shifts. Id. at ¶¶101–02. These infractions were so minor they did not normally warrant a "write-up". *Id*. at ¶ 100. Sgt. Erb told McCarty that she should have remained on light duty until she was "ready to work the street." *Id*. at ¶ 103. A disciplinary hearing was held for the write ups where Godlewski told McCarty: she was "not the same person" she once was; she "did not smile as much", it seemed like she "did not trust anyone" she "kept to herself" and "nobody liked it." *Id*. at ¶ 104.

In early 2019, McCarty asked to participate in training courses including ground fighting for women and a critical stress management course. *Id*. at ¶ 108. Godlewski authorized the Department to issue a down payment for the training, however, Godlewski later told McCarty that she was pulled from the classes and instructed her to get reimbursement of the Department's funds. *Id*. at ¶¶ 109, 119–21.

On February 19, 2019, a male officer, who had worked light duty for years following an on-duty injury, returned to full duty. *Id*. at ¶ 110–11. This officer was placed on the day shift and McCarty was switched to the evening shift. *Id*. at ¶ 112.

McCarty told Godlewski that she was not cleared by the Village therapist to return to the evening shift. *Id*. at ¶¶ 113–14. Godlewski told McCarty that she needed, "to look into disability because we will not be accommodating you." *Id*. at ¶ 115. McCarty was then assigned to light duty. *Id*. at ¶ 116. While McCarty was assigned to light duty, Godlewski asked her numerous times when she would be able work full duty and pressured her to apply for a disability. *Id*. at ¶ 125.

On April 12, 2019, while at the station, Officer Francke told McCarty she needed to "[p]ull her big girl panties up and return to work." *Id*. at ¶ 126. On May 10, 2019, Officer Francke hid and jumped out from behind a station door to scare McCarty. *Id*. at ¶ 127. Another male officer approached McCarty at work and told her to be careful because Sgt. Erb was trying to revoke her Firearms Owner Identification Card (FOID) and believed she was "mentally unstable." *Id*. at ¶ 128.

Afraid she would be fired if she did not return to full duty, McCarty met with her therapist to discuss the situation. *Id*. at ¶ 129. Subsequently, Dr. Kroll discussed with Godlewski scenarios which would allow McCarty to return to full duty including working the day shift with a partner in a ride along program. *Id*. at ¶ 130. Godlewski denied these requests, though the Department previously allowed two similarly situated male officers to remain on light duty at the station until they were cleared for full duty. *Id*. at ¶ 131.

### iv. McCarty's Termination and Commencement of EEOC Review

In July 2019, McCarty was ordered to train a new civilian employee. *Id*. at ¶ 132. Two weeks later, McCarty was terminated. *Id*. at ¶ 133. Recognizing that she was going to be terminated, McCarty filed an application with the Pension Board seeking an award of disability and in August 2021, McCarty was awarded a disability benefit for PTSD resulting from the original incident. *Id*. at ¶¶ 134–35.

On April 22, 2020, McCarty filed a Charge of Discrimination against the Village with the IDHR, which was cross-filed with the Equal Employment Opportunity Commission (EEOC) (hereafter, "EEOC Charge"). *Id*. at ¶ 136.

McCarty filed five-count complaint against the Village and Chief Godlewski, in his official and individual capacity, alleging: (1) failure to accommodate under the ADA against the Village (2) sex discrimination and hostile work environment under Title VII against the Village and Godlewski, (3) an equal protection claim under 42 U.S.C. § 1983 against the Village, (4) intentional infliction of emotional distress (IIED) against Godlewski, and (5) sex discrimination and hostile work environment under the Illinois Human Rights Act (IHRA) against the Village and Godlewski. Defendants move to dismiss the complaint in its entirety.

### II. Standard

4

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. Analysis

Defendants argue that: (1) McCarty cannot show that she is a qualified individual with a disability under the ADA, (2) McCarty's § 1983 and IIED claims are time-barred, and (3) McCarty has failed to exhaust her hostile work environment claim or any claim against Chief Godlewski.[3]

### A. Judicial Notice

As a preliminary matter, this Court addresses Defendants' request that the Court take judicial notice of several exhibits attached to their motion. McCarty objects to the Court taking judicial notice of any documents not attached to the complaint [19 at 4]. However, her argument is undeveloped.[4] *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Still, the Court recognizes that "[j]udicial notice is a powerful

---

[3] Defendants argue McCarty's retaliation claim should be dismissed based on failure to exhaust. [14 at p. 15] McCarty does not allege retaliation and the Court will not address this issue further.

[4] Moreover, McCarty herself refers to, for example, her disability application at the Pension Board in the first amended complaint. [13 at ¶¶ 134–35].

tool that must be used with caution." *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018).

A Rule 12(b)(6) motion can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it. *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Tobey v. Chibucos,* 890 F.3d at 648. In this case, the first amended complaint attaches McCarty's EEOC filings and right to sue letter, internal Lakemoor documents about training and Defendants' legal response to the EEOC charge. The Court accepts as true, as it must, McCarty's allegations about the cancellation of her training. (Dkt. 13, Ex. B). But the Court cannot credit the factual assertions in Defendants' response to the EEOC (Dkt. 13, Ex. D), to the extent they contradict the allegations contained in the third amended complaint (e.g., Dkt. 14, Ex. 5, email disputing McCarty's assertion that Defendants refused her request for a ride along as an accommodation). *See Tobey v. Chibucos,* 890 F.3d 634 at 641 ("in light of certified court documents, parts of Tobey's version appear highly improbable, and yet because of the posture of the case, we must credit his [complaint] anyway. To the extent that his personal observations differ from the public record, we must resolve those conflicts in his favor on a motion to dismiss.").

This Court may take judicial notice of "matters of public record", such as of an administrative proceeding, without converting the motion to a summary judgment motion. *See General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997); *Fornalik v. Perryman,* 223 F.3d 523, 529 (7th Cir. 2000). However, "courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." *General Elec. Capital Corp.,* 128 F.3d at 1082 n.6. In this case, the Court takes judicial notice that the Pension Board awarded McCarty with a full line of duty disability pension. However, the Court will not take judicial notice of the factual findings made by the Pension Board (Dkt. 14, Df. Ex. 2). *See Blackwell v. Kalinowski,* No. 08 C 7257, 2009 WL 1702992, at *2 (N.D. Ill. June 18, 2009) (taking judicial notice of administrative officer's decision and transcript of the public hearing but not of the underlying factual allegations in the reports from the proceeding). The Court may take judicial notice of the transcript of the Pension Board hearing (Dkt. 14, Df. Ex. 1). But the Court declines to take notice of the underlying physician's certificate of disability regarding McCarty's condition (Dkt. 14, Ex. 4), which is not referenced in the transcript at the Pension Board proceedings and is outside the pleadings. The Court also declines to consider the emails between Godlewski and Dr. Kroll, included in the Village's Response to McCarty's Charge of Discrimination (Dkt. 14, Ex. 5). These emails are meant to dispute facts alleged in the first amended complaint which is beyond the purview of this Court at this stage of the proceedings.

## B. ADA Claim (Count I)

6

The ADA prohibits discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A disability discrimination claim requires that McCarty (1) was disabled within the meaning of the ADA, (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) Defendant took an adverse employment action against her because of his disability or without making a reasonable accommodation for it. *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Defendants argues McCarty is judicially estopped from alleging that she is a "qualified individual with a disability" because she testified to contrary at the Pension Board hearing. McCarty disagrees and relies on the allegations in her complaint that she can perform all duties of a police officer *with a reasonable accommodation.* (Dkt. 13 at ¶ 7, 144) (emphasis added).

It is unusual, even troubling, that a plaintiff would be awarded full disability and then assert an ability to perform the functions of the job with an accommodation as required by the ADA. Nevertheless, the Court disagrees with Defendants that, at this stage of the proceedings, judicial estoppel bars McCarty's ADA claim. "The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions." *Spaine v. Cmty Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). The following non-exhaustive factors inform the decision whether to apply the doctrine in a particular case: "[(1)] a party's later position must be clearly inconsistent with its earlier position, [(2)] … the party has succeeded in persuading a court to accept that party's earlier position, … [(3)] … the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) (citation omitted).

Defendants argue that McCarty testified under oath that she could no longer perform the essential job functions of a police officer and that this was, in part, the basis for the award of the duty disability pension. *See* Df. Ex.1 at 32. As such, McCarty may not take a different position here. McCarty counters that her positions in the two proceedings are consistent, and her testimony is best characterized as stating that she could no longer perform the essential functions of a police officer because her request for reasonable accommodations were discriminatorily denied. The first amended complaint essentially alleges that the Village refused her accommodations by transferring her back to evening duty, denying her extended light duty (as male officers received), and denying her a partner in a ride along program. McCarty further alleges that the Village harassed her into returning to work full time and then into applying for disability.[5]

---

[5] The court is not making any determination on the merits of these allegations but must accept them as true at this stage of the proceeding.

In her Pension Board proceedings, McCarty sought and received a full line of duty disability pension. Dkt. 13 at ¶¶ 134–35. To receive this, McCarty had to be "found to be physically or mentally disabled for service in the police department, so as to render necessary … her suspension or retirement from the police service…"40 ILCS 5/3-114.1(a); Df. Ex. 2 at 2. She testified: "with my triggers, I don't know that I could safely be a Police Officer, and effectively feel like I would put my partners at risk, and I would put the community at risk." Def. Ex. 1, 32:8-11. That testimony might well present real challenges for McCarty in this case, but she did not deny the discriminatory allegations in this case before the Pension Board. And there is no testimony regarding whether she could perform light duty. At this stage of the proceedings, McCarty can aver that she was prevented, because of the Village's refusal to accommodate her, from performing the functions of her job.[6] Thus the motion to dismiss McCarty's ADA claim is denied.

## C. Title VII (Count II) and the IHRA (Count V)

As to Counts II and V, the Court first agrees with Defendants that Godlewski cannot be personally liable under Title VII. *See Passananti v. Cook County*, 689 F.3d 655, 662 n.4 (7th Cir. 2012); *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 453 n.9 (7th Cir. 2023) ("supervisors are not subject to individual liability under Title VII"). Moreover, as Defendants point out, McCarty did not respond to this argument, waiving any response. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Alioto*, 651 F.3d at 721. Defendant Godlewski is dismissed from Count II.

Next, as to the Village, the Court addresses whether McCarty exhausted her administrative remedies for her hostile work environment and sex discrimination claims. Defendants argue she failed to exhaust because "the Charge of Discrimination did not contain reference to any harassment, hostile work environment, nor did it mention any personal conduct of the Chief of Police." [14 at 13]. McCarty counters that in addition to her EEOC Charge, her EEOC intake questionnaire shows she exhausted. The Court finds McCarty properly exhausted.

Title VII requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.12(a). Contrary to Defendants' assertions, documents submitted to the EEOC, other than the formal EEOC Charge, can be considered in

---

[6] Defendants request McCarty be sanctioned [15] for bringing this claim considering her testimony before the Pension Board. The Court does find the posture of an ADA claim following an award of disability to be unusual. But the Court will not impose sanctions at this time. "The decision to impose sanctions is left to the discretion of the trial court in light of the available evidence…" *In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (citing *Divane v. Krull Elec. Co., Inc.,* 200 F.3d 1020, 1025, 1028 (7th Cir. 199)). Defendants' motion for sanctions [15] is denied without prejudice.

the exhaustion analysis. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008); *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010); *Philbin v. Gen. Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 323-24 (7th Cir. 1991) (per curiam) (finding that EEOC intake questionnaire satisfied statutory charge filing requirement). *See also Stein v. Town N′ Country Title LLC*, No. 20-CV-675-PP, 2020 WL 7714664, at *3 (E.D. Wis. Dec. 29, 2020); *McClendon v. Illinois Dept. of Transp.*, No. 12-cv-2021, 2015 WL 4638095 (N.D. Ill. Nov. 25, 2015).

Here, Defendants do not challenge the authenticity of McCarty's EEOC Charge or the EEOC "Inquiry Information." Instead, they argue in their reply that the "'Inquiry Information' is not a questionnaire." [23 at 9]. However, the EEOC Inquiry number, 440-2020-03105, is the same as the EEOC Charge number and the questionnaire was completed the same day as McCarty's Charge. Defendants do not cite any authority that McCarty is required to produce a "verified" questionnaire. McCarty's intake questionnaire describes gender and disability discrimination and alleges a hostile work environment resulting from it. Dkt. 13-3 at 3. Thus, McCarty exhausted her Title VII claims (against the Village) and IHRA claims.[7]

### D. Section 1983 (Count III) and Intentional Infliction of Emotional Distress (Count IV).

Defendants contend that Counts III and IV are barred by the statute of limitations. This Court agrees. As statute of limitations is an affirmative defense, McCarty's complaint is not required to state all facts necessary to overcome it. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, should McCarty plead facts that effectively establish the defense. *See id.*

McCarty does not dispute that the statute of limitations for § 1983 claims in Illinois is two years. *See* 735 ILCS 5/13-202. Defendants argue that the statute of limitations began to run from the date of McCarty's termination, which McCarty alleges is August 6, 2019. As McCarty filed her complaint in October 2022 (well after August 6, 2021), her claims are time-barred. McCarty responds that her claims are timely because of a continuing violation.

Under Seventh Circuit law, termination by an employer is a discrete act that is a "final, ultimate, [and] non-tentative decision" such that the statute of limitations accrues from that date. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F. 3d 632, 637 (7th Cir. 2004). *See also Straub v. Foods*, No. 1:17-CV-6401, 2020 WL 1914768, at *15 (N.D. Ill. Apr. 20, 2020) (discrete acts such as termination "don't blossom into unlawful discrimination – either they are discriminatory when they happen, or they

---

[7] Other than their exhaustion argument, Defendants do not challenge McCarty's IHRA claim against the Village.

aren't."), aff'd sub nom., 840 F. App'x 886 (7th Cir. 2021). As such, the date of accrual for McCarty's § 1983 claim is August 6, 2019. Thus, her § 1983 claim is time barred.

Similarly, her state law IIED claim is untimely. The Local Government and Governmental Employees Tort Immunity Act provides that no civil action may "be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received, or the cause of action accrued." 745 ILCS 10/8-101(a). Defendants argue this claim has the same accrual date as the § 1983 claim. McCarty again relies on the continuing violation doctrine, asserting that the Village "made the salacious allegation that she had a sexual relationship with a co-worker" during the IDHR investigation and this extends the statute of limitations. McCarty does not cite any case law in support, leaving this argument undeveloped. *See Crespo*, 824 F.3d at 674; *Alioto*, 651 F.3d at 721.The Court finds no basis to apply the continuing violation doctrine in this case. McCarty's IIED claim is therefore dismissed as untimely.

### E. Defendant Chief David Godlewski

Defendants argue that Godlewski should be dismissed from the case as he was not properly named in McCarty's Charge of Discrimination. This Court agrees. Under Title VII, after receiving a right to sue letter, a plaintiff filing in federal court "may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). As such, "a party not named as the respondent in the charge may not ordinarily be sued in a private civil action." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

The Village of Lakemoor is the only respondent listed in McCarty's Charge of Discrimination. McCarty does not address this argument, so any response is waived. Though McCarty mentions Godlewski in her EEOC intake form, she lists him in the section requesting information of persons who will *support* her claim. The Title VII claims are already dismissed against Godlewski because Title VII does not allow for supervisory liability. McCarty's IHRA claims are also dismissed as to Godlewski.

### IV.  Conclusion

For the stated reasons, Defendants' Motion to Dismiss [14] is granted in part and denied in part. Defendants' Motion for Sanctions [15] is denied. Plaintiff's ADA claim, Title VII and IHRA claims alleging gender discrimination and hostile work environment (Counts I, II and V) against the Village survive. Defendant Chief David Godlewski is dismissed with prejudice from the case.

E N T E R :

Dated: August 21, 2023

_____
MARY M. ROWLAND
United States District Judge