```
1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3    BRIANNA McCARTY,                )  Docket No. 22 C 5751
                                     )
4                 Plaintiff,         )  Chicago, Illinois
                                     )  October 17, 2023
5         v.                         )  10:29 a.m.
                                     )
6    THE VILLAGE OF LAKEMOOR,        )
                                     )
7                 Defendant.         )

8
           TRANSCRIPT OF PROCEEDINGS - Rule to Show Cause
9              BEFORE THE HONORABLE MARY M. ROWLAND

10
     APPEARANCES:
11

12   For the Plaintiff:    MR. DANIEL Q. HERBERT
                           Herbert Law Firm
13                         53 W. Jackson Boulevard
                           Suite 964
14                         Chicago, IL 60604

15
     For the Defendant:    MR. DOMINICK L. LANZITO
16                         Peterson Johnson & Murray LLC
                           200 W. Adams Street
17                         Suite 2125
                           Chicago, IL 60606
18

19   Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                           Official Court Reporter
20                         219 S. Dearborn Street, Room 1224
                           Chicago, IL 60604
21                         312.435.6053
                           laura_renke@ilnd.uscourts.gov
22

23

24

25
```

```
 1            (In open court.)
 2                 THE CLERK:  22 C 5751, McCarty v. Village of Lakemoor.
 3                 THE COURT:  Good morning.
 4                 MR. HERBERT:  Good morning.  How are you, your Honor?
 5    My name is Dan Herbert, and I represent the plaintiff,
 6    Ms. McCarty.
 7                 MR. LANZITO:  Good morning, your Honor.  Dominick
 8    Lanzito, L-A-N-Z-I-T-O, on behalf of defendant.
 9                 THE COURT:  Good morning.
10            Okay.
11                 MR. LANZITO:  I -- oh.  I can report on the motion,
12    your Honor.
13                 THE COURT:  Okay.  The --
14                 MR. LANZITO:  This is our motion --
15                 THE COURT:  About the deposition?
16                 MR. LANZITO:  Yes, your Honor.
17                 THE COURT:  Okay.
18                 MR. LANZITO:  So Attorney Baron Harmon contacted us on
19    behalf of Dr. Kroll.  We've scheduled it for October 23rd at
20    3:00 p.m.  Apparently she was not in the office, and whoever
21    her assistant was was not returning or provid -- forwarding
22    e-mails.
23                 THE COURT:  Okay.
24                 MR. LANZITO:  So we have the documents that were part
25    of our subpoena *duces tecum*, and we also have the date set for
```

1 next Monday.

2   THE COURT: Okay. Great.

3   MR. LANZITO: So I would just ask to enter and
4 continue it generally.

5   THE COURT: Okay. That's fine.

6   Yeah, I didn't think she would be uncooperative. I
7 mean, she's given everything to the village anyway -- right? --
8 as a -- I mean, for some period of time she was operating -- at
9 least from the motion to dismiss, I recall, she was operating
10 as a -- not the village's therapist, but she would still
11 provide information to the village based upon the plaintiff's
12 signing off on that for some period of time.

13   Now, obviously that probably terminated at some point.
14 But --

15   MR. LANZITO: I believe she's still treating Brianna
16 Tedesco -- or McCarty. She began treatment, and she also
17 provided certificate of dis -- ongoing certificate of
18 disability for the pension in 2022. So you are accurate in
19 that she is Ms. McCarty's therapist.

20   THE COURT: Okay.

21   MR. LANZITO: And she was reporting to the village
22 from time to time on accommodation requests.

23   THE COURT: Okay. So petition for rule to show cause.
24 I'll continue it. And do you want to just withdraw it at some
25 point, or do you want to --

```
1                 MR. LANZITO:  Once we're done --
2                 THE COURT:  -- just report back?
3                 MR. LANZITO:  -- I'll just report back.  I have all
4     belief that we're just going to -- it will be withdrawn.
5                 THE COURT:  When it's done.
6                 MR. LANZITO:  Yes.  And I already explained to the
7     attorney I would relay to the Court.
8                 And then we're supposed to be in front of you next
9     Thursday at 9:30 to report on status.
10                THE COURT:  That doesn't seem smart.
11                MR. LANZITO:  That's why I brought it up, your Honor.
12    It was just -- you set it before, and we have deps coming up on
13    discovery.
14                THE COURT:  Yeah.  So why don't we move that date.
15                MR. LANZITO:  All right, your Honor.
16                THE COURT:  Because you're going to do this deposition
17    on Monday, and then you have other deps coming up.
18                When is the close of discovery?
19                MR. LANZITO:  I believe it's the end of the month.
20    But we have three this week, the doctor, and I think we're
21    trying to do two next week and maybe one the week after.
22                THE COURT:  So do you want to move our status to the
23    3rd of November or even later in November?
24                MR. HERBERT:  I would suggest later, your Honor, only
25    because we have the motion to dismiss the counterclaim, and I
```

1  think that -- that responses aren't until -- or my reply
2  wouldn't be until mid-November, I believe.
3              THE COURT:  Yeah, okay.  So why don't we do that.  Why
4  don't we move it.  I have a couple of trials set.  So -- boy,
5  Dawn, the 21st is going to get very ugly.
6              Why don't we move it to November 21st.  Dawn, do you
7  want to do it at 9:00?  Should we --
8              THE CLERK:  Sure.
9              THE COURT:  Yeah, that's going to get ugly that day.
10             MR. LANZITO:  I'm available.
11             THE COURT:  Okay.  Great.
12             MR. LANZITO:  And, your Honor, speaking of the motion
13 to dismiss, that may impact our motion for summary judgment as
14 well.
15             THE COURT:  Well, I was going to talk more broadly
16 about the case.  I know you're wrapping up discovery.  And I
17 knew you had your issue with the doctor, which I think is why I
18 set today.  So I'll strike the status for next week.
19             But -- so I'm wondering if there's a way that we
20 can -- once discovery closes, you're going to want to file a
21 motion for summary judgment, I know.  You've got now a motion
22 to dismiss, which for me, just with my schedule, I'm going to
23 look at those -- basically, I'm going to look at them at the
24 same time because by the time this gets -- this gets briefed
25 and then your motion for summary judgment gets briefed, I'm not

1    going to get to the motion to dismiss until -- by the time I
2    get to it, your motion for summary judgment is going to be
3    briefed is my thinking.
4            And I'm just wondering if there's a way -- and I know
5    this has been very hotly contested.  And I understand why the
6    village would be concerned that Ms. McCarty would -- would, you
7    know -- did she get disability --
8            MR. HERBERT:  She did, yes.
9            THE COURT:  -- or pension?  Yes, so that she would go
10   and get disability and then pursue an ADA claim.  And she
11   may -- you may get summary judgment.
12           If she gets -- if summary judgment is denied -- you
13   know, if she were to win a claim -- of course, there'd have to
14   be some -- she can't double -- she can't get a double award,
15   right?
16           MR. HERBERT:  Agreed.
17           THE COURT:  So I don't know how that would work,
18   technically how that would work.  But if she were to win on an
19   ADA claim, she can't get past back wages.
20           MR. LANZITO:  No, she's getting a full duty disability
21   pension.  She would receive full PEDA benefits.
22           Our position is that in order for her to win on an ADA
23   claim, that means she has to be able to do the job with a
24   reasonable accommodation, which would mean that our claim would
25   be valid then and we would be entitled to reimbursement.  So

1   now you're dealing with competing claims.

2   THE COURT: So she would have to pay that money back
3   or it would have to be deducted from any jury award of back
4   pay. And whether or not -- of course, there'd be in limine
5   motions. There'd be questions -- were she to survive summary
6   judgment, there'd be questions about would the jury hear that
7   she was awarded disability for purposes of mitigation so that
8   they could take that into account in terms of a damages award,
9   or would they not hear about it and that's just a mathematical
10  matter that we would take up if she were awarded back pay.

11  But she certainly couldn't be paid twice. There's no
12  doubt about that, I think, in all of our minds.

13  So what I'm suggesting is, you know, she may have been
14  harassed, and some of this -- do you have a gender claim as
15  well, or is it just --

16  MR. HERBERT: We have a gender claim, yes, because --

17  THE COURT: Okay. So some of this may have happened.
18  I don't know. I mean, I can't possibly know.

19  But I'm just -- I'm just wondering about whether this
20  case is getting a little off the rails. And I say that because
21  I -- the first time around on the motion to dismiss, I had a
22  Rule 11 motion. I -- now I have your motion to dismiss, and I
23  have another Rule 11 motion.

24  So -- and I know I have two very good lawyers in front
25  of me. I know you. We've had some matters before, so I've

1  dealt with you professionally before.  And I -- and I know no
2  lawyer likes filing Rule 11 motions.
3           So I'm just -- I'm wondering if there's a way to kind
4  of -- I don't know -- kind of calm the waters here a little bit
5  because she, obviously, did her job, and then things went off
6  the rails for her through no fault of her own.  I think
7  everybody agrees.  And I'm just wondering if there's a
8  different way to handle this.
9           I'm happy to rule on the motions for summary judgment.
10 I'm happy to rule on the motion to dismiss.  Maybe I'll throw
11 the whole case out.  Maybe we'll go to a jury.
12          But even if she gets to a jury, she can't be
13 compensated twice on the back pay.  That I know.
14          Now, of course, she could seek compensatory damages,
15 and I guess she could seek some punitive damages if she's got a
16 sex harassment claim.  I can't remember what all her claims
17 are.
18          But is there a way to kind of tone this down and maybe
19 try to resolve it?  Or is -- are we just so dug in?  And I
20 respect you if you are.  I got very dug in on cases myself, so
21 I have no qualms about that.  But I'm seeing what's happening,
22 and I'm just wondering if it's a good -- if it's a good path
23 for the clients.
24          MR. HERBERT:  From the plaintiff's perspective, your
25 Honor, with respect to your points about looking at she can't

1    collect twice, we agree. But my understanding is that the
2    pension is -- it's not quite what her full pay would be. But,
3    obviously, yes, it's close, and she wouldn't be compensated for
4    it.
5         What I will say is that my client is a -- she is very
6    reasonable, very smart. She was angered at being terminated,
7    obviously, because it was a job that she loved. And it really
8    bothered her.
9         We have not discussed settlement because from the
10   outset of this case, it has been nothing but attack mode on my
11   client. And nothing against counsel, who's been professional
12   all the way through, but she has been attacked.
13        And so we haven't -- we haven't even had an
14   opportunity to consider some type of a reasonable outcome. But
15   I can report that, you know, I've represented a lot of clients,
16   and she is a very, very nice person and reasonable. And I
17   would think that she would be amenable to something.
18        THE COURT: I don't know that we're even -- I
19   wouldn't -- I wouldn't think, what I'm seeing, another Rule 11
20   motion, that we're at a point of settlement. I mean, I think
21   it's too hot right now to talk about that.
22        And I want to say I understand why the village would
23   be angry that somebody would come in and get disability pay and
24   then file a lawsuit. And I don't know the chronology of that.
25   But I understand that. And I saw your motion giving me the

1 transcripts where she said, "Yes, I can't do my job." I see
2 it.
3     I actually looked for another case where that might
4 have happened because I -- I don't know if it -- there must be
5 other cases where that's happened --
6     MR. LANZITO: Not where --
7     THE COURT: -- where there's ADA.
8     MR. LANZITO: Not where the case has been sustained.
9     THE COURT: Okay. So, you know, and you might prevail
10 on summary judgment. I might be wrong about that. I was
11 accepting their theory, which is she could have done it with an
12 accommodation, meaning she could have been on desk duty for
13 five years, done her therapy, and then gone out and --
14     MR. LANZITO: That's -- yeah, that's the disagreement,
15 on what the accommodation. That's a department of 13 officers.
16     THE COURT: Okay.
17     MR. LANZITO: Yeah.
18     THE COURT: So, you know, here we are.
19     And I -- you know, there's going to be evidentiary
20 calls, frankly, for a jury to hear that, hey, she got full
21 disability. You know, what's the jury going to think about
22 that? You know, so I -- I can see the challenges here.
23     Maybe one thing we think about doing -- and I don't
24 know where your people are at, and sometimes the chief of
25 police leaves and so other people come in and they're, like,

1 "Hey, let's" -- you know, so I don't know what's happening in
2 Lakemoor.
3 But maybe what we do is you finish up discovery and
4 then you come in and say, "Let's not set summary judgment until
5 the new year. Let's let everybody chill and revisit it." I'm
6 not -- we don't have to do that. I'm happy to set summary
7 judgment today, you know. But maybe that's an avenue, that
8 everybody go through the holidays and kind of think is this
9 where we want to go.
10 I'm not trying to force you to settle. I don't --
11 it's fine with me if you do motions. It's -- we can set a
12 trial. But I am just wondering about the wisdom of this, I
13 guess, partly for the plaintiff.
14 And I know that she was a good officer at one point,
15 so I do have some respect for that, and I'm sure the village
16 thinks that at some point given what I've read in the papers.
17 And then, you know, obviously things went south.
18 But I'm just really reacting to two Rule 11 motions in
19 a case, and that's not the norm.
20 MR. LANZITO: I understand, your Honor.
21 THE COURT: Yeah. So why don't we come back at the
22 status. You guys finish up your discovery. Hopefully the
23 doctor will cooperate and that won't be a problem.
24 And then you tell me what you want to do. And if you
25 want to take a break, let things cool off, if you want to try

1    to sit down with the magistrate judge or with me, I'm happy to
2    try to do that.  If you want to go full steam ahead, I'm happy
3    to do that.  You let me know.  Okay?
4             MR. LANZITO:  Understood, your Honor.
5             THE COURT:  Okay.  So we have a next date.  So we'll
6    strike next week, and we'll see you in a couple months -- or a
7    month.
8             MR. LANZITO:  A month, yeah.
9             MR. HERBERT:  Great.  Thank you, Judge.
10            MR. LANZITO:  Thank you, your Honor.
11            MR. HERBERT:  Thanks for the consideration and the
12   analysis.
13            THE COURT:  Have a good day.  Yeah, have a good day.
14            THE CLERK:  This court stands in recess.
15       (Concluded at 10:42 a.m.)
16                         C E R T I F I C A T E
17      I certify that the foregoing is a correct transcript of the
18   record of proceedings in the above-entitled matter.
19
20   */s/ LAURA R. RENKE*                              *October 27, 2023*
     LAURA R. RENKE, CSR, RDR, CRR
21   Official Court Reporter
22
23
24
25